# EXHIBIT 21

# DIVISION INVESTIGATION REPORT
# #DI-3105-14-0067-D



# SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## DIVISION INVESTIGATION CLOSING FORM

TROOP/DISTRICT: STP District 5          POST/STATION:

| | |
|---|---|
| Case Number: | DI-3105-14-0067-D |
| Employee Name: | David G. Cobb |
| Division: | STP |

Subject:   Complaint:  ☐ Citizen  ☒ Department  ☐ Vehicle Collision

To:   Office of Professional Responsibility

---

### Assigned Investigator

The attached investigation has been conducted and has been classified as follows (Use additional pages if necessary):

☐ Exonerated      ☐ Unfounded      ☐ Not-Sustained      ☒ Sustained

Investigator: RL Williams          Rank/Title  Lt.          Date: July 3, 2014

---

### Command Review

I have reviewed the attached reports and findings and do concur with the findings and classification. (If a reviewer disapproves with the findings, please provide your finding and attach an explanatory memorandum.)

| | | | |
|---|---|---|---|
| ☐ Approve ☐ Disapprove | | | |
| Lieutenant          Date | | | |
| | _[signature]_ 7/8/14 | | ☒ Approve ☐ Disapprove |
| | Captain          Date | | |
| ☐ Approve ☐ Disapprove | | | ☐ Approve ☐ Disapprove |
| Major          Date | | Lieutenant Colonel          Date | |

---

### Recommendations (Colonel / Chief)

Based on my review of the file and employee's record, I recommend the following action:

Disability Retirement Effective 11-3-2013

_[signature]_ 7/22/14
Colonel /Chief          Date

**Comments (OHR Director)**

OHR Director          Date

## FINAL ACTION: AUTHORITY TO CLOSE CASE

Kenneth Phelps          Date
Chief

Leroy Smith          Date
Director

Rev. 4/13

DPS-OPR 03



# South Carolina Department of Public Safety

## DIVISION INVESTIGATION REPORT

### Case Number: DI-3105-14-0067-D

**SUBJECT:** Alleged Falsification of Documents/L/Cpl. D. G. Cobb (Retired)

**COMPLAINANT:** Lt. T.A. Walker

**INVESTIGATOR:** Lt. R.L. Williams

**ALLEGATION(S):** L/Cpl. D.G. Cobb falsified official documents and misrepresented his actions in accordance with proper procedures involving the inspection of commercial motor vehicles and the proper investigation of dyed fuel violations.

## INVESTIGATIVE INTRODUCTION

This investigation stems from an initial memorandum dated September 13, 2013 from Lt. T.A. Walker to Captain B.A. Bailey. In the memorandum, Lt. Walker advises Captain Bailey that after reviewing videos of traffic stops in STP District Five, he has discovered that L/Cpl. D.G. Cobb has been misrepresenting Level I Inspections.

Lt. Walker additionally sent a memorandum, dated October 11, 2013 indicating that it had been brought to his attention by Cpl. S.B. Norton of STP District Five, that Cobb was also conducting Fuel Dye checks without actually inspecting the fuel tanks of the vehicles he had documented as having checked.

## INVESTIGATION

On June 25, 2014 at 2:25pm, I interviewed Lt. T.A. Walker in the conference room at STP HQ. Lt. Walker stated that on September 5, 2013, he was at the STP District Five office. Walker, as part of a random inspection of officers' videotapes, told Sergeant M.F. Forster that he wished to review some videotapes of officers' traffic stops. Walker stated that he and Forster went into Corporal S.B. Norton's office where the file cabinet was that held the videotapes.

 South Carolina Department of Public Safety

Walker states that the videotapes on top of the stack inside the file cabinet belonged to L/Cpl. D.G. Cobb. Walker took the videotapes into Forster's office where the television was, so as to review the videotapes.

Walker indicates that upon viewing the first videotape, he sees Cobb pull over a vehicle, approach the driver, instruct the driver to activate his hazard lamps and then tells the driver, "I'm going to do a lap around your vehicle".

Walker says that at no time does Cobb instruct the driver to activate his turn signals, brake lights or in any other manner, check or inspect anything on the vehicle in question. Walker says that this led him to question the validity of the inspection because proper procedure was not followed...that would be, proper procedure for a Level II Inspection, much less a Level I Inspection.

Walker then says that he watched several more stops that Cobb had made and he noticed that he (Cobb) used the same procedure each time.

At this time, Walker said he telephoned STP HQ's and spoke with First Sergeant R. N. Cloud. Walker asked Cloud if he would pull inspection reports that corresponded with the stops/inspections that Walker was currently viewing.

Cloud called Walker back shortly and advised him that the stops in question that Walker was viewing were listed on Cobb's reports as Level I Inspections.

According to Walker, Cloud continued to assist him in matching the inspection report information with the videotaped stops that he was viewing. On all of the stops/inspections that involved hydraulic or electric brake vehicles, Walker indicates that Cobb continued to use the same procedure; asking the driver to activate his hazard lamps and then walking around his vehicle without actually inspecting anything. Walker says Cobb never goes under the vehicle(s), never touches anything and never has the driver raise the hood of the vehicle.

Walker does indicate that on many occasions these stops are not directly on camera. Walker says Cobb would pull alongside the vehicle. What Walker says he found troubling was that he would hear Cobb use the aforementioned procedure as far as his verbiage with the driver and that in some instances the total time taken from Cobb's introduction to the driver until the time he returns back to the driver to advise him that he has completed his inspection is 30-37 seconds. Walker indicated that on some videotapes, he was able to see more than on others, but that most were of the previous mentioned nature.

2

 **South Carolina Department of Public Safety**



Walker says all of the stops he has mentioned were vehicles that were of the electric or hydraulic brake class, either straight-truck hydraulic brake equipped vehicles and/or combination units in which the pulling unit was equipped with hydraulic brakes and the trailer was equipped with electric brakes and some of these vehicles were placed Out-of-Service. Walker says these vehicles were placed Out-of-Service due to lighting violations. When asked if he ever heard Cobb ask a driver to activate his brake lights or turn signals during an inspection, Walker stated, "No".

Walker said he could only surmise that perhaps Cobb had either witnessed by traveling behind the vehicles in question that their brake/turn lamps were inoperative or that when he (Cobb) was pulling the vehicle over, perhaps he noted a lighting violation at that time. Even if this was the case, Walker said it still disturbed him that Cobb never confirmed the lighting violations by directing the driver to activate said lights, much less take any effort to take the required steps mandated to fulfill the obligations of the inspection in which Cobb had detailed and signed his name that he had completed.

At this point, Walker took into his possession all of the videotapes that were labeled as being Cobb's and took them into his possession.

Walker then went to STP HQ and pulled all of Cobb's inspection forms that were listed as a Level I Inspection for the time in question as it pertained to the videotapes he currently was in possession of. He then matched these up for viewing to compare against the videotape. From September 10-12, Walker viewed all of these stops at the STP District One office.

Lt. Walker indicated that he had contacted Captain Bailey at STP HQ sometime between September 5 and September 13 regarding this issue. Walker stated that he had told Bailey that there was a problem with an officer in District Five that he (Walker) was looking into the matter.

During questioning, Walker indicated that he was fairly certain that he had told Bailey of the general nature of the problem but he does not recall whether he told Bailey who the individual officer was at that particular time.

On September 13, 2013, Walker sent a memorandum to Captain Bailey detailing the failure of L/Cpl. Cobb to follow proper procedures while conducting his Level I Inspections. In this memorandum, Walker requests further review and investigation into this matter.

During the interview with Lt. Walker, he was asked if L/Cpl. Cobb had any videotape footage of a CMV that was equipped with air brakes. Lt. Walker stated that there were inspections conducted on CMV's with air brakes and on these particular inspections, Cobb, Walker stated, conducted the inspections properly.

3

 South Carolina Department of Public Safety

When asked how many of the total inspections he viewed contained inspections that were of vehicles that were equipped with air brakes, Walker stated that approximately 50% were air brakes.

For purposes of clarification, it appears that all of the air brake equipped vehicles inspected by Cobb were conducted in accordance with North American Standard Inspection Procedures.

It also appears that all vehicles equipped with non-air brake systems were not inspected according to the North American Standard Inspection Procedure.

Lt. Walker describes one particular videotape of a stop/inspection in which Cobb is approached by the owner of one of the two vehicles he has stopped at the time of the videotape recording. During this stop, according to Walker, Cobb points out to the owner of one of the trucks an item under the raised hood of the vehicle. Walker then says Cobb informs the owner that this is one of the most important aspects of an inspection of a hydraulic brake- equipped truck........checking the hydraulic brake fluid level. This, according to Walker clearly shows that Cobb knew the correct procedure for inspecting these types of trucks/brake systems and simply was neglecting to do them properly in the previously viewed stops.

Lt. Walker describes one stop that Cobb conducts in which he (Cobb) weighs a vehicle with hand scales (he may or may not have issued a weight ticket, Walker couldn't be certain) and documents the inspection as a Level I. Again, Walker indicates that the vehicle was weighed only; there was no Level I inspection conducted.

Lt. Walker was then contacted by Cpl. S.B. Norton at a later date (date unknown) in regards to Cobb's record of Fuel Dye checks.

Walker indicates that while reviewing Cobb's stops again, this time relative to the Fuel Dye checks, that he sees no evidence of these checks being conducted. Walker stated that he never saw Cobb remove a fuel cap to visually inspect the tank and during instances where he visually could not see Cobb performing the inspection he heard no evidence to suggest that a fuel dye check or removing of the fuel cap was taking place.

It is worth noting that Fuel Dye training does permit the officer to check for Fuel Dye without actually "dipping "the tank for a sample. An officer is permitted to visually inspect the tank to make a determination whether a sample should be taken or not.

Walker stated there was no evidence to suggest that Cobb conducted these Fuel Dye checks, whether by taking a sample or by visual inspection. Walker states that Cobb never stated to the driver that he was going to be checking for dyed fuel. This is difficult in some instances, again due to Cobb pulling alongside of the vehicle being checked.

4

 **South Carolina Department of Public Safety**

Lt. Walker prepared a memorandum dated October 11, 2013 and addressed to Captain B.L. Bailey advising him of the concern passed along to him (Walker) by Cpl. Norton as well as advising Bailey of seeing no evidence of actual Fuel Dye checks being performed as they had been documented.

I interviewed L/Cpl. Cobb on June 26, 2014 at 9:40 am. The interview was conducted via telephone. L/Cpl. Cobb indicated that he had never received a letter from OPR but had been contacted by them by telephone when the original investigation began.

Cobb stated that he did not always check Fuel Dye by taking samples from the tanks of CMV's that he was checking. Cobb indicated that it was permitted in training for Fuel Dye checks that a visual inspection of the fuel tank would suffice.

When asked about any discrepancies in regard to Level I Inspections that may have arisen, Cobb said that he had experienced computer problems resulting in the computer automatically labeling some of his inspections as Level I Inspections when this was not his intention. Cobb stated that he told Cpl. S.B. Norton about this problem and that Norton advised him to state in the "Notes" section of the Driver/Vehicle Examination Report of the problem with the computer not correctly labeling the inspection.

On June 26, 2014, I interviewed Trish Matthews of STP HQ. Ms. Matthews is the STP Assistant Statistical and Research Analyst and handles many inspections as they arrive from the field and also assists officers with the ASPEN Program. Ms. Matthews was interviewed due to her extensive knowledge of the ASPEN Program and especially in regards to how information is entered, deleted, changed or presented when an officer is performing an inspection.

Ms. Matthews was asked if an inspection can automatically be selected or defaulted in the ASPEN Program to show a certain level of inspection, whether the officer performed that level of inspection or not.

Matthews stated that ASPEN will not automatically select a level of inspection to be recorded. She indicated that the officer could mistakenly select the wrong level of inspection from the tab that is shown for the level to be selected from.

In the matter of a Level I Inspection, Matthews indicated that an officer could erroneously select "Level I", however, ASPEN will not allow the completion of a Level I Inspection on the computer without the officer entering several blocks of information which are prompted and must be completed and filled in before ASPEN will allow the inspection to be labeled "Level I".

 South Carolina Department of Public Safety

Notably, if an officer selects via his computer, to label what he is performing a Level I Inspection, a page will appear prompting the officer to provide the number of axles that said vehicle is equipped with. Also, of equal importance, a Level I cannot be completed due to the fact that the ASPEN Program will again, prompt the officer to provide the type, size, as well as the particular measurement of all brakes.

In the instance that a hydraulic or electric brake equipped vehicle is checked, there will be no measurement in that particular block; it will however denote either hydraulic or electric.

Ms. Matthews was unaware of any problems that Cobb had in the past of the nature he had described to me. Matthews went back and together we reviewed some of Cobb's Level I Inspections from 2013 to see if anything had been written in the notes section advising of the particular problem he had spoken of. Nothing was seen in the sampling we looked at to suggest he forwarded any notes referencing any problems in regard to the inspections being misrepresented.
Ms. Matthews simply stated that it was not possible for the ASPEN Program to present a problem the likes of which Cobb had suggested and she indicated that she had never seen the alleged problem before.

On June 27, 2014 at approximately 9:03am, I interviewed Cpl. S.B. Norton of STP District Five in the STP HQ conference room.

Cpl. Norton did not recall any specifics of any computer problems that Cobb was having. Norton did state that Cobb had told him of some kind of an issue that he was having with his (Cobb's) computer but that he could not recall the nature of the issue.

I spoke with Otis Davis of ITO on July 1, 2014 at 1:10pm. I asked Mr. Davis if there was anything on record regarding Cobb indicating a problem with his computer. Davis stated that in March 2012 there was a work order for Cobb that referenced "issues" with his computer...but nothing specific.

## CONCLUSION

After conducting the investigation into this matter and including the interviews conducted, I am of the opinion that the allegation of falsifying documents, more to the point, misrepresenting the performance of Level I Inspections of CMV vehicles equipped with hydraulic or electric brakes is very probable.

6

 ## South Carolina Department of Public Safety

L/Cpl. Cobb's assertion that his computer and/or the ASPEN Program automatically defaulting to show a Level I Inspection when he did not intend for it to is far-reaching and based on the experts interviewed who have conducted inspections and who in one instance is intimately familiar with the nuances of the ASPEN Program and what it is capable of and what it is not capable of, Cobb's statements seem at the very least weak and his logic flawed. I find no evidence of a computer problem of the nature he described and no evidence of any effort on his part to record and forward documentation of any said problem or glitch.

It is noteworthy that Lt. Walker indicated that Cobb did indeed conduct proper Level I Inspections on vehicles equipped with air brakes. I'm not certain why the dichotomy exists between the effort put forth to follow procedure on one type of vehicle while virtually following none of the procedures on other types.

Lt. Walker indicated that many of the stops did not produce a full visual of the activities that Cobb was involved in, however, the time and pattern of his conversation with drivers at the very least brings into question the truthfulness of his activities recorded on a large number of Level I Inspections, as well as his reported Fuel Dye checks.

## CLASSIFICATION

**ALLEGATION (S):** L/Cpl. D.G. Cobb falsified official documents and misrepresented his actions in accordance with proper procedures involving the inspection of commercial motor vehicles and the proper investigation of dyed fuel violations. **Sustained**

DPS-OPR04

7

OPR File# DI-3105-14-0067-D

## WARNING TO EMPLOYEE REQUIRED TO PROVIDE INFORMATION

The purpose of this interview is to obtain information which will assist in the determination of whether administrative action is warranted.

You will be asked a number of specific questions regarding the performance of your official duties, or to any questions related to the Department's standard of conduct.

You have a duty to respond to these questions truthfully and to the best of your ability.  Agency disciplinary action, including dismissal, may be undertaken if you refuse to answer or fail to reply fully and truthfully.

Neither your answers nor any information or evidence gained by reason of your answers can be used against you in any criminal proceeding, except that if you knowingly and willfully provide false statements or information in your answers, you may be criminally prosecuted for that action. The answers you furnish and any information or evidence resulting therefrom may be used in the course of an agency disciplinary proceeding which could result in disciplinary action, including dismissal.

### ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee _____  Date: 6.25-14

Investigator _____  Date: 6-25-2014

Witness _____  Date: _____

OPR File #  DI-3105-14-0067-D

## WARNING TO EMPLOYEE REGARDING CONFIDENTIALITY

In accordance with South Carolina Department of Public Safety (SCDPS) **Policy Directive Number 400.08, Office of Professional Responsibility,** I have been directed by Lt. R.L. Williams, a liaison with the Office of Professional Responsibility (OPR), to keep confidential any investigative-related conversation or information concerning the investigation of OPR File # DI-3105-14-0067-D earned through any contact with an Investigator, to the extent that such directive neither prohibits nor infringes upon my right to legal counsel.

Accordingly, I will keep confidential all communications with OPR or Investigators assigned thereto, to the extent that confidentially does not inhibit my right to legal counsel. I will also keep all written statements confidential and will not furnish copies to anyone other than my attorney.

### ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee: _____ Date: _____6.25-14_____

Investigator: _____ Date: _6-05-2014_

Witness:_____ Date:_____

DPS-OPR-06

OPR File# DI-3105-14-0067-D

## WARNING TO EMPLOYEE REQUIRED TO PROVIDE INFORMATION

The purpose of this interview is to obtain information which will assist in the determination of whether administrative action is warranted.

You will be asked a number of specific questions regarding the performance of your official duties, or to any questions related to the Department's standard of conduct.

You have a duty to respond to these questions truthfully and to the best of your ability.  Agency disciplinary action, including dismissal, may be undertaken if you refuse to answer or fail to reply fully and truthfully.

Neither your answers nor any information or evidence gained by reason of your answers can be used against you in any criminal proceeding, except that if you knowingly and willfully provide false statements or information in your answers, you may be criminally prosecuted for that action. The answers you furnish and any information or evidence resulting therefrom may be used in the course of an agency disciplinary proceeding which could result in disciplinary action, including dismissal.

## ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee _____ Date: 6-26-14

Investigator _____ Date: 6-06-2014

Witness _____ Date: _____

OPR File #_DI-3105-14-0067-D

## WARNING TO EMPLOYEE REGARDING CONFIDENTIALITY

In accordance with South Carolina Department of Public Safety (SCDPS) **Policy Directive Number 400.08, Office of Professional Responsibility,** I have been directed by Lt. R.L. Williams, a liaison with the Office of Professional Responsibility (OPR), to keep confidential any investigative-related conversation or information concerning the investigation of OPR File # DI-3105-14-0067-D earned through any contact with an Investigator, to the extent that such directive neither prohibits nor infringes upon my right to legal counsel.

Accordingly, I will keep confidential all communications with OPR or Investigators assigned thereto, to the extent that confidentially does not inhibit my right to legal counsel. I will also keep all written statements confidential and will not furnish copies to anyone other than my attorney.

### ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee: _____ Date: 6-26-14

Investigator: _____ Date: 6-26-2014

Witness:_____ Date:_____

DPS-OPR-06

OPR File# DI-3105-14-0067-D

# WARNING TO EMPLOYEE REQUIRED TO PROVIDE INFORMATION

The purpose of this interview is to obtain information which will assist in the determination of whether administrative action is warranted.

You will be asked a number of specific questions regarding the performance of your official duties, or to any questions related to the Department's standard of conduct.

You have a duty to respond to these questions truthfully and to the best of your ability. Agency disciplinary action, including dismissal, may be undertaken if you refuse to answer or fail to reply fully and truthfully.

Neither your answers nor any information or evidence gained by reason of your answers can be used against you in any criminal proceeding, except that if you knowingly and willfully provide false statements or information in your answers, you may be criminally prosecuted for that action. The answers you furnish and any information or evidence resulting therefrom may be used in the course of an agency disciplinary proceeding which could result in disciplinary action, including dismissal.

## ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee _Scott Horton_ Date: _6-27-14_

Investigator _____ Date: _6-27-2014_

Witness _____ Date: _____

OPR File # DI-3105-14-0067-D

## WARNING TO EMPLOYEE REGARDING CONFIDENTIALITY

In accordance with South Carolina Department of Public Safety (SCDPS) **Policy Directive Number 400.08, Office of Professional Responsibility,** I have been directed by Lt. R.L. Williams, a liaison with the Office of Professional Responsibility (OPR), to keep confidential any investigative-related conversation or information concerning the investigation of OPR File # DI-3105-14-0067-D earned through any contact with an Investigator, to the extent that such directive neither prohibits nor infringes upon my right to legal counsel.

Accordingly, I will keep confidential all communications with OPR or Investigators assigned thereto, to the extent that confidentially does not inhibit my right to legal counsel. I will also keep all written statements confidential and will not furnish copies to anyone other than my attorney.

### ACKNOWLEDGEMENT

I have read the above warnings and understand my rights and responsibilities as stated herein.

Employee: _Scott Morton_ Date: _6-27-14_

Investigator: _Pat J. Ailing_ Date: _6-31-2014_

Witness: _____ Date: _____

DPS-OPR-06



## South Carolina Department of Public Safety

State Transport Police Division

### MEMORANDUM

**TO:**       Richard G. Shell
             Captain

**FROM:**     Leroy Taylor
             Colonel

**DATE:**     June 10, 2014

**SUBJECT:**  OPR File #DI-3105-14-0067-D
             L/Cpl. D. G. Cobb (Retired)
             Alleged Falsification of Official Documents

Please have Lt. Thomas A. Walker conduct a full investigation into the complaint alleging falsification of official documents by L/Cpl. D. G. Cobb. All witnesses are to be interviewed and statements are to be properly documented. Return your findings and recommendations to my office in writing within 10 days.

As always, your immediate attention to this request is appreciated.

LT/mtm

Attachments

PDF File #35292B



## South Carolina Department of Public Safety
### Office of Professional Responsibility



MEMORANDUM

**TO:** Colonel Leroy Taylor
State Transport Police

**FROM:** Chief K. D. Phelps

**DATE:** June 2, 2014

**SUBJECT:** OPR File #DI-3105-14-0067-D
L/Cpl. D. G. Cobb
Alleged Falsification of Official Documents

In accordance with Department guidelines, the attached complaint regarding alleged falsification of official documents by L/Cpl. D. G. Cobb is forwarded for your review.

Please refer to the attached correspondence which details the events concerning the complaint. **Please note that a recorded copy of an interview with the subject is also to be sent back to the OPR upon completion of this investigation.**

The OPR will suspense a copy of this complaint. Please contact the OPR at the conclusion of your investigation for final report review and coordination of any recommended disciplinary action. If the OPR can be of any further assistance, please do not hesitate to call 896-8240.

/ss

Attachments

# South Carolina Department of Public Safety




TO:     FILE                          DATE:     June 2, 2014
FROM:   Susanne                       CASE #:   PR-3105-13-0071-D
THRU:                                 SUBJECT:  L/Cpl. D. G. Cobb

☐ as we discussed                     ☐ note and file
☐ as you requested                    ☐ note and return
☒ for your approval                   ☐ note and see-call me on this
☐ for your comments                   ☐ prepare reply
☐ for your information                ☐ reply for my signature
☐ for your signature                  ☐ take appropriate action
☐ investigate and report              ☐ return with more details

Per Chief Phelps, on May 30, 2014, case number PR-3105-13-0071-D was administrately closed and opened as DI-3105-14-0067-D.



## South Carolina Department of Public Safety
Office of Professional Responsibility

October 11, 2013

L/Cpl. D. G. Cobb
State Transport Police

RE: OPR File #PR-3105-13-0071-D

Dear Lance Corporal Cobb:

The Office of Professional Responsibility (OPR) has received a complaint alleging "falsification of official documents" against you. As you know, the Department is committed to providing law enforcement and other services that are fair, effective, and impartially applied. The Department also strives to provide citizens with a fair and effective avenue for redress of their legitimate grievances against Department employees, and by the same token, to protect those same employees from false allegations of misconduct or wrongdoing.

This letter is to notify you that an investigation into the complaint has been initiated. The case has been assigned to Investigator Trey Skinner who will be in contact with you in the near future.

The OPR conducts all internal investigations of alleged misconduct by Department employees and has the responsibility to uncover, fully develop, and objectively report all facts and circumstances surrounding allegations, or complaints of misconduct, to my office. As part of the investigation, you will be interviewed. Until that time, if you have any questions, please feel free to contact your chain of command. Additionally, South Carolina Department of Public Safety, Policy Directive 100.07, may provide relevant information to you.

Sincerely,

Chief K. D. Phelps

/ss

C:     Director Leroy Smith
       Colonel Leroy Taylor

10311 WILSON BLVD., BLYTHEWOOD, SC 29016 - POST OFFICE BOX 1993, BLYTHEWOOD, SC 29016



# STATE TRANSPORT POLICE



☒ **ACTION MEMORANDUM**
☐ **COMPLAINT REVIEW**

**South Carolina Department
of Public Safety**

000035292

| **SUBJECT:** Request for investigation Attached letter from Lieutenant T. A. Walker | **DATE:** October 8, 2013 |
|---|---|

| **TO:** Chief K. D. Phelps OPR | **THROUGH:** | **FROM:** Colonel Leroy Taylor STP |
|---|---|---|

| **ACTION REQUIRED:** Review and Proper Handling | **PRIORITY RESPONSE BY:** ☐ Low ☒ Normal ☐ High |
|---|---|

**SUMMARY:** This request is generated out of alleged improper enforcement procedures by Lance Corporal D. G. Cobb of STP District Five. In addition to the failure to follow proper procedures by Captain B. L. Bailey

### CONCURRENCES: ENFORCEMENT/ ADMINISTRATIVE OPERATIONS

| Req. Sign off (X) | UPPER ENFOR CAPT | LOWER ENFOR CAPT | ADMIN CAPT | UPPER LT | LOWER LT | OPR | CRO | BUD. OFFICE | HR | IT | SPL OPS | BUS OFFICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Initial | | | | | | | | | | | | |
| Date | | | | | | | | | | | | |

**COMMENTS:**

✓ Approved
___ Not Approved

*Leroy Taylor*     10/8/13
**Colonel's Signature and Date**

___ Approved
___ Not Approved

_____
**Director's Signature and Date**



# South Carolina Department of Public Safety
State Transport Police

## MEMORANDUM

TO:         Kenneth D Phelps
            Chief, OPR

FROM:       Leroy Taylor
            Colonel

DATE:       October 8, 2013

Re:         Request for Investigation
            Lance Corporal D. G. Cobb
            Captain B. L. Bailey

Attached you will find a memorandum dated September 13, 2013, addressed to Captain B. L. Bailey written by Lieutenant T. A. Walker. In this memorandum Lieutenant Walker outlines some serious allegations against Lance Corporal Cobb for falsifying inspection reports. Even more disturbing, this information was given to Captain Bailey and it was never brought to my attention.

LT/

Attachments (1)



# South Carolina Department of Public Safety
## State Transport Police

### MEMORANDUM

| | |
|---|---|
| TO: | Capt. B.L. Bailey |
| FROM: | Lt. T.A Walker |
| DATE: | September 13, 2013 |
| SUBJECT: | D.G. Cobb<br>Failure to follow proper inspection procedures |

On September 5, 2013, I went to District 5 Office to conduct a random review of video tapes. I pulled the top video to review, which belonged to L/Cpl. D.G. Cobb. In reviewing the video tape I noticed improper inspection procedures. Officer Cobb would stop the truck, talk to the driver and instruct him to activate his flashers and headlights. He would then proceed to walk around the vehicle, collect the driver's information and paperwork, complete his inspection and give the driver a copy and release the driver.

After reviewing several more traffic stops, I contacted F/Sgt. Cloud at Head Quarters and asked him to look at the copies of the inspections I had reviewed. While reviewing the officers documented inspection, I found that several were marked as Level 1 inspections. As a certified Level 1 inspector for almost twenty years, I recognized that the North American Standard Roadside Inspection Procedures were not being correctly utilized. All Transport Police Officers are trained and certified under like procedures and guidelines when conducting this level of inspection.

After reviewing several more traffic stops and inspections, I made copies of all of L/Cpl. Cobb's inspections from April 4 through September 9, 2013 and collected the corresponding video tapes for further review. On September 10 and 12 I reviewed all of L/Cpl. Cobbs' video tapes and corresponding Level 1 inspections as well as random level 2 inspections. L/Cpl. Cobb did not follow proper procedures on any inspections. He misrepresented all level 1 inspections; some vehicles were not inspected at all. I request a further review and a possible investigation into L/Cpl. Cobbs' failure to follow proper inspection procedures.i



# South Carolina Department of Public Safety

State Transport Police

## MEMORANDUM

TO:        Capt. B.L. Bailey

FROM:      Lt. T.A. Walker  *TAW*

DATE:      October 11, 2013

SUBJECT:   Fuel Dye
           Lance Corporal D.G. Cobb
           District # 5

In addition to the memo sent about L/Cpl. Cobb regarding his inspections, it was brought to my attention by Cpl. Norton that Cobb also sent in his fuel dye check sheet before he went out on sick leave. After reviewing the fuel dye check sheet and watching his video tapes, he did not check the fuel tanks for dyed fuel.

*10-11-2013*

*Colonel:*
*Per Lt. Walker this*
*is an addendum to the*
*Cobb packet. Do I need*
*to take it upstairs?*
*E:Drive (only)*
*File # 35292 A*    *Thanks,*
*            Norton*

Attachments ( )